**Marvin SPIRES, Plaintiff,**

v.

**James L. BOTTORFF, Defendant.**

**No. NA 62–C–4.**

United States District Court
S. D. Indiana,
New Albany Division.

Nov. 5, 1963.

Marvin Spires, pro se.

Robert G. Bottorff, Owen Voigt, Jeffersonville, Ind., Richard C. O'Connor, Orbison, Rudy & O'Connor, New Albany, Ind., for defendant.

HOLDER, District Judge.

The plaintiff, Marvin Spires, on January 22, 1962, filed his Motion to Proceed in Forma Pauperis with a civil action for the recovery of damages against James L. Bottorff, Judge of the Fourth Judicial Circuit of the State of Indiana (Clark Circuit Court). From an adverse ruling on such motion, an appeal was taken in forma pauperis and it was reversed on May 3, 1963. Spires v. Bottorff, 7 Cir., 317 F.2d 273. The complaint was filed on June 13, 1963 [1] and

1. "COMPLAINT

"Comes now the plaintiff, Marvin Spires, and complains of the defendant, James L. Bottorff, and for his complaint under 28 U.S.C.A. Section 1343 and 42 U.S.C.A. Section 1983 of the Civil Rights Act, plaintiff alleges and says:

"1. Upon information and belief, that at all times hereinafter mentioned, the defendant, James L. Bottorff of Jeffersonville, Indiana and as Judge of the Fourth Judicial Circuit of the State of Indiana, was acting under color of the laws of the State of Indiana and exercising the authority of said State, as a judge thereof, to unlawfully deprive the plaintiff Marvin Spires of the right to have due process of law as secured to him by the Fourteenth Amendment of the Constitution of the United States.

"2. To unlawfully prevent this plaintiff from having access to the court that illegally convicted him, the defendant sent a letter to the Warden of the Indiana State Prison on March 19, 1957, which letter caused said Warden to issue an order on March 25, 1957, whereby this plaintiff was forbidden to correspond with the Clerk of the Circuit Court of Clark County, Indiana. Copies of defendant's letter, marked exhibit A, and the Warden's order, marked Exhibit B, are made a part of this Complaint as fully as though set forth herein in full, and by such reference are adopted as a part of this Complaint.

"The defendant's letter (Exhibit A.) on official stationery, though littered with false statements, lent an air of authority to defendant's request in the concluding paragraph causing the Warden to issue the order (Exhibit B.) which stopped the mailing of this plaintiff's legal papers and pleadings to the Clerk of the Clark County Circuit Court.

"Consequently, and as a direct result of defendant's letter (Exhibit A.), this plaintiff was effectively prevented from sending his legal papers and pleadings to the Clerk of the Clark County Circuit Court wherein he had been illegally convicted and he was thereby precluded from prosecuting an action at law in his behalf then pending in that court. The defendant therefore misused and abused the power and authority given him by state law to deprive this plaintiff of the right to have free and unhindered access to that court in which he had been wrongfully convicted; and in this instance the defendant solely, wholly and directly caused this plaintiff to be wrongfully deprived of due process of law.

"3. To further unlawfully deprive this plaintiff of due process of law, the defendant wrongfully interferred with the

issues were joined by the answer in two defenses filed June 19, 1963. The action was placed on the trial calendar published August 16, 1963, with the trial date of September 16, 1963, and a pre-trial conference date of September 3, 1963.

The pre-trial conference hearing disclosed that the plaintiff was serving a life sentence in the Indiana State Penitentiary under a commitment from the Clark Circuit Court in the State of Indiana and that the defendant was seventy-seven (77) years of age whereupon the plaintiff's Petition for a Writ of Habeas Corpus Ad Prosequendum was granted. The State of Indiana honored this court's order and produced the plaintiff for trial. The plaintiff's request for the issuance of a subpoena was granted. The trial was

trial of a Petition for a Writ of Error Coram Nobis (Commenced by authority of Spires v. Dowd, Warden, 7 Cir., 271 F.2d 659.) before a Special Judge in the Clark County Circuit Court on September 28, 1961, which was being heard to determine whether the constitutional rights of this plaintiff had been violated at the time of his conviction in that court in 1946. Here, again, the defendant misused and abused the power and authority given him by state law to deprive this plaintiff of the right to receive a fair and impartial trial of said Petition for a Writ of Error Coram Nobis. The defendant influenced the Special Judge's decision to deny said petition in the following manner:

"Although the defendant had been properly disqualified on grounds of bias and prejudice and duly removed as judge of said coram nobis action on May 19, 1960, he nevertheless for personal reasons wrongfully interferred with the trial of that cause on September 28, 1961: (1) He intruded in the trial of that cause to reassert his authority over those proceedings from which he had been duly disqualified and removed as judge; (2) he intruded in the trial of that cause to regain control of those proceedings from which he had been duly disqualified and removed as judge; (3) he intruded in the trial of that cause to interfere with the lawful jurisdiction of the Special Judge trying that cause; (4) he made and filed in that cause an affidavit containing statements he knew to be untrue, for the purpose of justifying both the void judgment of conviction he rendered against this plaintiff in 1946 and the manner in which he violated the constitutional rights of this plaintiff at that time; (5) he made false statements during the trial of that cause while not under oath nor as a properly subpoenaed witness for the purpose of misleading and confusing the court as to the true facts of the case; and (6) he intruded in the trial of that cause for the sole purpose of intimidating and discrediting the Indiana Public Defender who was representing this plaintiff in that cause and to discourage the Public Defender from making an appeal for this plaintiff.

"By reason of the aforesaid facts the trial of the Petition for a Writ of Error Coram Nobis was disrupted by the intrusion of the defendant who willfully and wrongfully influenced the Special Judge's decision to deny said petition. That petition was denied on September 28, 1961, not because it was without merit but only because of said defendant's hatred for this plaintiff and to satisfy his personal desire to keep this plaintiff imprisoned wrongfully and without due process of law. Thus in this instance said defendant solely, wholly and directly caused this plaintiff to be wrongfully deprived of due process of law.

"4. That at all times heretofore mentioned, the defendant James L. Bottorff of Jeffersonville, Indiana and as Judge of the Fourth Judicial Circuit of the State of Indiana, was acting under color of the laws of the State of Indiana and exercising the authority of said State, as a judge thereof, to willfully and wrongfully deprive this plaintiff of his liberty without due process of law as secured to him by the Fourteenth Amendment of the Constitution of the United States.

"5. That by reason of the foregoing, this plaintiff has been subjected to the deprivation of this right to have due process of law resulting in the loss of his rightful liberty and wrongful imprisonment and suffered damage thereby, and in other divers ways and manners further suffered damage in all to his damage in the sum of One Hundred Thousand ($100,000) Dollars.

"WHEREFORE, plaintiff asks for judgment against the defendant for the sum of One Hundred Thousand ($100,000) Dollars, besides the costs and disbursements of this action and attorney fees.

"s/ Marvin Spires,

"Plaintiff"

commenced on September 16, 1963 and concluded at 11:30 P.M.

## PRE-BANK ROBBERY HISTORY
### 1911–1946

The plaintiff was born on June 14, 1911 in the State of Missouri. He lived with his family in the States of Louisiana, Alabama and Illinois. Plaintiff left his parents in Chicago, Illinois, when he was nineteen (19) years of age getting tired of Chicago. After leaving Chicago, about 1930, until 1946 the plaintiff either resided in or spent some time in the States of California, Illinois, Georgia, Florida, Pennsylvania and Michigan. Plaintiff was married to Bessie Furtak in December, 1942. Plaintiff registered for the draft in 1941 in Philadelphia, Pennsylvania, while visiting his brother now a resident of Iowa and never received a classification nor did he serve in the armed services for the reason as plaintiff expressed that he moved around so much the draft board never caught up with him. During this time, his known employment consisted of being a factory boy, bookbinder and automobile salesman. In 1936, the plaintiff was convicted of the offense of grand theft in the State of California, and sentenced for the period of one (1) to ten (10) years and served eighteen (18) months of such sentence; and on November 30, 1939, the plaintiff was convicted in the United States District Court for the Northern District of Georgia at Gainesville, Georgia, in Cause Number 3191, of the Federal Offense of transporting a stolen motor vehicle in interstate commerce knowing it was stolen, was sentenced for the period of fifteen (15) months and served the full fifteen (15) months.

## BANK ROBBERY HISTORY

In May of 1946, the plaintiff with his family left Florida and went to Chicago, Illinois, where they remained until mid-September, 1946, visiting his wife's friends and her family in Decatur, Michigan. In mid-September, they left Chicago for Florida and stopped in Louisville, Kentucky. Plaintiff was not employed during this period. An interview on October 23, 1946 at the Indiana State Penitentiary, which was reduced to writing and signed by Mr. Spires, is quoted as follows:

### "INDIANA STATE PRISON
### IDENTIFICATION DEPARTMENT REPORT

| Date Interviewed | 10-23-46 | | By: Mr. A. J. Funk. | (w) |
|---|---|---|---|---|
| Institution Name | SPIRES, Marvin H. | | Reg. No. | 23699 |
| Detainers | | | Escapes | |

| True Name | Marvin H. Spires | Offense | Bank Robbery | Sentenced | 10–16–46 |
|---|---|---|---|---|---|
| Race | White | Sentence | LIFE | | |
| | | | Fine $-0- | Costs | $17.00 |
| Age | 35 | Max: F & C pd | LIFE | Not paid | LIFE |
| Birthdate | 6-14-11 | Min: F & C pd | LIFE | Not paid | LIFE |
| Birthplace | Missouri | Commutation | | Judge James L. Bottorff | |
| Residence | Georgia | Par. Viol. | | | |
| Marital | Married | Released | | County | Clark |
| Citizenship | U. S. | Returned | | Court | Circuit |
| Yrs. in U.S. | 35 State 1 month | Eligible | | Cause No. | 7641 |
| | | | | Received | 10–17–46 |

"CRIMINAL HISTORY:

"1936: California State Prison: (San Quinten) #———. Grand "Theft: 1–10

"1939: Federal Prison: (Atlanta) #———. Auto Theft: 15 months.

"INMATE'S STATEMENT:

"I was born in the State of Missouri 35 years ago; am married and have two sons who are 2 and 9 years old. I went to the 7th grade in school; am a laborer by occupation, but was not working at the time of my arrest.

"On or about September 20, 1946, I was arrested by the City Police in the City of New Albany, Indiana, and lodged in the City Jail where I was held for Jeffersonville, Indiana, Authorities. Later in the same day of my arrest, I was turned over to Jeffersonville Police and was taken to Jeffersonville where I was placed in the Clark County Jail. I was charged with robbing the First Federal Savings and Loan Association, of Jeffersonville, Indiana, on or about September 20, 1946. It was charged that I stole $248.-25 in the robbery. I was guilty as charged. I was charged with being a Habitual Criminal and held for trial.

"On October 16, 1946, I appeared before Judge James L. Bottorff, of the Clark County Circuit Court, and there I entered a plea of guilty to the charge of Being A Habitual Criminal and was sentenced to serve a term of LIFE imprisonment in the Indiana State Prison.

"I have read the above statement and it is true. I sign this statement of my own free will.

"SIGNED: s/ Marvin Spires.

"WITNESSED: s/ A. J. Funk .
"ACCOMPLICE: None.
"ALIASES: George Collins.
"REFERENCES: None."

———◆———

When Mr. Spires was arrested he had on his person the approximate sum of the bank robbery funds. The Prosecuting Attorney of the Fourth Judicial Circuit of Indiana, on September 21, 1946, filed an affidavit in the Clark Circuit Court of Indiana at Jeffersonville, Indiana, charging the defendant in two counts with the offense of robbery, and robbery while armed which was docketed as Cause Number 7623. Mr. Spires appeared in person and by his employed attorneys, Thomas Pointer and Howard J. Snyder, at the arraignment in Cause Number 7623, when Mr. Spires entered a plea of not guilty, bond was fixed at Five Thousand Dollars ($5,000.00) and he was remanded to the Clark County Jail in default of bond. The Clark County Prosecutor on September 27, 1946 filed a motion dismissing the affidavit in two counts in Cause Number 7623 for the reason of filing another affidavit on the same date against Mr. Spires in Cause Number 7632 filed September 27, 1946 charging Mr. Spires in two counts with the offenses of robbery and robbery while armed. Upon arraignment in Cause Number 7632 on September 27, 1946, the defendant, Judge of the Clark Circuit Court, appointed Grover C. Todd as Mr. Spires' attorney when Mr. Spires entered a plea

of not guilty, bond was fixed at Five Thousand Dollars ($5,000.00) and he was remanded to the Clark County Jail in default of bond. Cause Number 7632 was set for trial for October 10, 1946 by the court's order of October 3, 1946. Mr. Spires through his attorney, Mr. Todd, on October 5, 1946, filed in Cause Number 7632 a motion for change of judge which was sustained on October 8, 1946 and a panel of three judges was submitted consisting of Judges Lottick, Hedden and Nichols. Mr. Spires through his attorney struck Judge Nichols on October 9, 1946 and the Clark County Prosecuting Attorney struck Judge Lottick on October 12, 1946 and on October 14, 1946 Judge Hedden assumed jurisdiction and set the trial date of the case for October 17, 1946. On Sunday morning at about 7:00 o'clock October 13, 1946, Mr. Spires and another jail inmate viciously assaulted and beat the Clark County Sheriff, Mr. Charles H. Dunlevy, (now sixty-eight (68) years of age who appeared as a witness in this case) in the jail with iron slats wounding him so severely that a number of sutures were required to close the wounds in his scalp. Mr. Spires escaped but was captured shortly thereafter in the City of Jeffersonville, Indiana. Subsequent investigation resulted in a criminal charge against Mr. Spires' wife for aiding and abetting the jail break on evidence of her providing a metal saw to Mr. Spires in jail and also the fastening of a loaded gun by means of adhesive tape to the underside of a table in a room in the Court House provided for interviews between attorneys and their clients. Mrs. Spires was tried, convicted and sentenced to the Indiana Women's Prison at Indianapolis, Indiana. She died of natural causes through illness while serving her sentence. Mr. Spires was never charged with a crime attending the jail break. The day before the jail break on October 12, 1946, the Clark County Prosecuting Attorney, after learning of his prior felony convictions, filed a new affidavit in the Clark Circuit Court charging defendant with the offense of bank robbery and being a habitual criminal which was docketed as Cause Number 7641. Mr. Spires communicated with his attorney, Mr. Todd, who went to the jail and was informed by Mr. Spires that the prosecutor had learned of his criminal record and was now prosecuting him as a habitual criminal. Mr. Todd advised him of his rights, and of the mandatory sentence of life imprisonment. Mr. Spires advised his attorney that he wanted to plead guilty to the new charge. Upon arraignment in the Clark Circuit Court on October 16, 1946, before its regular judge, the defendant herein, Mr. Todd was appointed to represent Mr. Spires in the new action, Cause Number 7641. Mr. Spires and Mr. Todd were present in court and a plea of guilty was entered to the offense charged in the affidavit in Cause Number 7641. The defendant in this civil action, Judge Bottorff, then imposed the statutory mandatory sentence of life imprisonment and executed the commitment of defendant. Without the knowledge of Judge Bottorff, the Clark County Prosecuting Attorney failed to dismiss the pending affidavit before Judge Hedden in Cause Number 7632 which was still pending at the time of filing, arraignment and sentencing in Cause Number 7641. In fact the affidavit in Cause Number 7632 was not dismissed until June 18, 1953. Mr. Spires was immediately transported to the Indiana State Penitentiary which received him on October 17, 1946 when he commenced serving the sentence under the commitment of such court in Cause Number 7641 and has continuously been so confined and serving such sentence from October 17, 1946 to the date of this trial.

His attorney, Mr. Grover Todd, was a capable, experienced, competent attorney and faithfully discharged his obligations to his client, Mr. Spires. Mr. Todd has practiced law in Clark County Indiana since 1922, that is, in the year 1946 he had twenty-four (24) years experience which included two (2) terms as the prosecuting attorney and eight (8) years

service as the public defender by appointment of the County Commissioners of Clark County Indiana to represent indigent persons. Mr. Spires has alleged in various actions that his counsel was incompetent.

## PRISON HISTORY

Except for the first three (3) years of Mr. Spires' seventeen (17) years of confinement in the Indiana State Penitentiary he has been a hostile, recalcitrant and uncooperative prisoner. He packed and boxed license plates from October, 1946, until October 26, 1949, when he claims he requested a transfer out of the shop for the reason that the racket and noise of the punch presses were getting on his nerves. The penitentiary records disclose that he was reprimanded on July 23, 1948 for being late to work; he was given seclusion confinement on June 2, 1949 for refusing to obey orders; he was given solitary confinement (2nd grade) on October 26, 1949 for his refusal to work; he was reprimanded for disobedience on September 20, 1950; he was given solitary confinement (2nd grade) on April 4, 1953 for disrespect for the Warden and other employees; and he was given solitary confinement on August 4, 1954 for destroying state property. Mr. Spires resented the officers of the institution and freely showed his displeasure. He has maintained throughout the years that he would not work. He was transferred from seclusion confinement on June 2, 1950 to the new seclusion building because he rejected the idea of working unless he was allowed to choose the job. On one occasion, Mr. Spires claimed that the reason he would not work was because he did not want to work alongside colored people. During July and August of 1950, he was a good inmate in the new seclusion building. On September 16, 1950, while in the new seclusion building, he participated in a general strike refusing to bathe and shave. In October and November, 1950, he was taken off restriction because he was cooperating and adjustment appeared to be good until 1953. From approximately June of 1953 until approximately May of 1957, the personnel of the Indiana State Penitentiary refused, because of his conduct, to permit Mr. Spires to send any mail from the institution. Somehow Mr. Spires was able to communicate outside the prison despite these bans and restrictions. Up until May of 1963, he has maintained he was sent to the penitentiary to do time and not to work. He was asked several times about getting out of seclusion and he refused. He was out of the penitentiary on several occasions pursuant to court order attending court proceedings instituted by Mr. Spires. On February 9, 1959, he wrote the following letter to Alfred F. Dowd, Warden:

"February 9, 1959

"Alfred F. Dowd, Warden.

"Please be advised that, unless steps are taken to bring about my unconditional discharge not later than thirty (30) days from the above date, proceedings will be instituted in the Federal court against yourself and others for damages in the approximate amount of Four Hundred and Forty-Eight Thousand Dollars ($448,000.00), plus an additional One Hundred Dollars ($100.00) per day for each day of confinement beyond the above date.

"Please be advised further that in addition to the above proposed action the question of my illegal confinement will be raised in the Federal court on criminal proceedings against all parties concerned. Such proceedings will be based on the criminal sections of the federal civil rights statutes.

"s/ Marvin Spires"

Mr. Spires has been a prolific writ writer. Mr. Spires filed an action for injunction and damages against the Governor of Indiana, Cause Number 3214, in the United States District Court for the Northern District of Indiana, South Bend Division. Thereafter in the first part of May, 1963, Mr. Spires' case was reviewed by

the Disciplinary Board of the Indiana State Penitentiary who concluded to bring Mr. Spires before the Institution's Classification Committee for the purpose of offering employment and return to the prison population. The Committee offered Mr. Spires a job in the institution's library which he accepted and he is now sheltered in a cellhouse. Mr. Spires has committed Judge Bottorff to a life sentence of litigation.

## SPIRES' LITIGATION PORTFOLIO

Following the confinement and up to the present time, Mr. Spires has been a party to the following litigation:

1. Action in error coram nobis filed on November 11, 1948 in the Clark Circuit Court but this action was dismissed because service of notice was not had on the Attorney General of Indiana;

2. Action in error coram nobis filed on November 3, 1952 in the Clark Circuit Court and was docketed with a civil cause number. A hearing was conducted in such proceeding on February 16, 1953 which was denied and no appeal was undertaken;

3. Following the suggestions of the opinion in Spires v. Dowd, Warden, (7 C.A.) 271 F.2d 659, Mr. Spires filed his third action in error coram nobis on April 21, 1960 in the Clark Circuit Court which was docketed in the original criminal action Cause Number 7641. Mr. Spires contended that his plea of guilty was not intelligently made and that he could not be charged and convicted of the offense for which he entered his plea of guilty, because of an action (Cause Number 7632 in Clark Circuit Court) charging him with the same offense was pending at the same time. After a change of judge, the Honorable Paul R. Schnaitter, Special Judge, in a memorandum unpublished opinion, denied Mr. Spires the requested relief on September 28, 1961. It stated that Mr. Spires was represented by competent counsel; the error in the proceeding did not prejudice his substantial rights; the affidavit in Cause Number 7641 was not void; and such technical error was cured and waived by the plea of guilty. Upon appeal, the Supreme Court of Indiana on April 9, 1963 held the trial court did not have jurisdiction to determine the merits of the proceedings for the reason that the Acts 1947, ch. 189, Sec. 2, p. 625, being Section 9–3302 Burns 1956 repl. forbid a court to assume jurisdiction where all the matters were adjudicated or might have been adjudicated in the prior proceedings so that the issues presented in this third proceeding was res judicata. Spires v. State of Indiana (Ind.1963) 189 N.E.2d 413; Ind. 190 N.E.2d 653.

4. An action to mandate the dismissal of the affidavit in Cause Number 7632 in the Clark Circuit Court. The affidavit in Cause Number 7632 was dismissed on June 18, 1953. No appeal was taken.

5. Action against Matthew Welsh, Governor of Indiana, and the Warden of Indiana State Penitentiary filed in the LaPorte Circuit Court. The nature of this action is unknown to this court. The action was dismissed by the court on motion of the defendant and no appeal was taken.

6. Action against J. Ellis Overlade, as Warden of the Indiana State Prison, filed January 22, 1957, in the United States District Court for the Northern District of Indiana, South Bend Division, which was docketed as Civil Cause Number 2180. This action was dismissed by that court. Mr. Spires in this action was complaining of the prison discipline, its rules and regulations, and being held virtually incommunicado since August 12, 1955 as violating his constitutional rights. This action was filed three (3) months before Judge Bottorff's letter in question in the instant action.

7. Action against Alfred P. Dowd, Warden Indiana State Penitentiary, for habeas corpus filed October 10, 1958, as Cause Number 2475, in the United States District Court for the Northern District of Indiana, South Bend Division. After a motion to dismiss was sustained, the appeal resulted in a reversal Spires v.

Dowd, Warden, (1959 C.A.7) 271 F.2d 659.

8. Action against Matthew Welsh, Governor of Indiana, for injunction and damages docketed as Cause Number 3214 United States District Court Northern District of Indiana, South Bend Division. The action is still pending.

### PLAINTIFF'S TACTICAL CAMPAIGN AGAINST JUDGE BOTTORFF AND OTHERS

The plaintiff, Spires, by his own misconduct was involved in bank robbery after being twice convicted of two (2) felonies prior thereto. While awaiting trial for bank robbery and armed robbery, a habitual criminal affidavit was filed and he brutally assaulted the Sheriff and escaped. He was captured and thereafter pleaded guilty to the habitual criminal affidavit. By his own misconduct and harassment of prison employees and everyone from the Governor of Indiana, Sheriff of Clark County, Clerk of Clark County, Judge of the Clark Circuit Court, his attorney, Mr. Grover C. Todd, to the Special Judge, he has precipitated retaliation on their part. He has received, as a result of his campaign for liberation, concessions, closer restriction on his freedoms, or to crying pleas for relief from those suffering his abuses and harassments. Judge Bottorff on March 19, 1957, while still the Judge of the Clark Circuit Court and then seventy-one (71) years of age, on the court's stationery addressed and forwarded the following quoted letter to the Warden of the Indiana State Penitentiary:

"Clark Circuit Court
"James Bottorff, Judge
"Jeffersonville, Indiana

"March 19, 1957
"To the Warden
"Indiana State Prison
"Michigan City, Indiana
"Dear Warden:
"During the past several years the Clerk of this Court, and myself as Judge have been troubled and plagued by numerous correspondence mailed to each of us by one Marvin Spires, who from time to time, desires to know certain facts of record of which we are sure he is already cognizant.

"Recently we have received, at his request, several copies of affidavits and indictments with which he now stands charged in this Court, in connection with a robbery at the point of a gun of one of the financial institutions in this city. On other occasions Writs of Habeas Corpus Corum Nobis have been received, given attention, and assigned for trial. These numerous cases, without any fault on the part of the Court, had to be carried over from time to time because of the failure of the man Spires to appear for trial. Now he desires copies of all of those charges upon which he has never been tried, due to the fact that he is still serving out his sentence in the previous case. As I stated above, Mr. Spires is not always courteous in his demands as the circumstances of his surroundings may have indicated a different viewpoint. We are glad to cooperate, and justly so, in all cases in which there would seem to be a demand for these copies.

"If you have some way by which this situation may be straightened out we would appreciate it very much if you would take the proper step to see that it may be done. You will understand from this what we are agitated with, for it seems to us that after having supplied Mr. Spires from time to time with that which he has desired that we send him, it should be ample for whatever he may desire to apply it to.

"Very truly yours,
"s/ James L. Bottorff
"James L. Bottorff
"Judge
"JLB:mr"

The Judge's letter was received by the Warden on March 21, 1957. Thereafter,

on March 25, 1957, the Warden issued the following written order:

"OFFICE OF
THE WARDEN
"March 25, 1957

"TO: Mr. Jergens, Mail Room
"FROM: J. E. Overlade, Warden
"SUBJECT: Marvin H. Spires
#23699

"In view of a letter from the Honorable James L. Bottorff, Judge, Clark Circuit Court, Jeffersonville, Indiana; I wish to advise that the above named inmate will not be permitted to correspond, effective immediately, either with Judge Bottorff or the Clerk of the Clark County Circuit Court.

"J. E. Overlade, Warden
"JEO;rk
"cc: Mr. Rudicel
"Mr. Heyne
"Mr. Walker
"Mr. McCart"

The Warden's order was not formally expunged from the records until January, 1959, however, it was not effective after May of 1957 when the Warden was replaced due to a change of administrations in Indiana. The new Warden's personnel were acquainted with the new Warden's policy of permissive communications of the prison population by reason of prior service under such Warden. Formal expunging did not take place sooner because the Warden did not know about the written order until January, 1959. While the Warden's order of March 25, 1957 refers to Judge Bottorff's letter of March 19, 1957, according to Mr. Spires' testimony, such policy of the prison authorities had been in effect since 1953 and the written order amounted to nothing more than a continuance of preexisting policy. While such order was in effect, between March 25, 1957 to May of 1957, Mr. Spires was working on the habeas corpus action to be filed in the United States District Court for the Northern District of Indiana, South Bend Division, which was ultimately filed October 10,

1958. He contemplated no action of any kind in the Clark Circuit Court during this period of time. He had filed an action January 22, 1957 in the United States District Court for the Northern District of Indiana, South Bend Division, Cause Number 2180. While at points in his testimony, he sought to improvise his testimony that such order of the Warden prevented contemplated action by Mr. Spires in the Clark Circuit Court, yet, his later testimony clarified and corrected this improper assertion.

## CONCLUSIONS UPON ISSUES OF CASE

Judge Bottorff had the right to call to the Warden's attention the impropriety of the prisoner Spires direct communication with the Judge of the Clark Circuit Court. In the case of Spires v. Dowd, Warden of the Indiana State Prison, (7th C.A. 1959) 271 F.2d 659, Judge Schnackenberg, Circuit Judge said at page 661 of 271 F.2d:

"* * *. What we have just said does not extend to the mailing or sending of any material directly to any judge in the state courts. Such mailing or sending to a judge is improper."

In this regard Judge Bottorff was acting as a Judge of the Fourth Circuit of Indiana and as such is entitled to judicial immunity.

Judge Bottorff's letter was a polite entreaty to the Warden to deal with Mr. Spires to prevent harassment of the judge and the elected clerk of the court. The letter did not request a specific relief for the clerk or the judge such as undertaken by the Warden's order of March 25, 1957. In fact the letter stripped of its recitations of the abuses and excesses of Mr. Spires from 1946 to 1957 reads as follows with emphasis added:

"* * *. If you have some way by which this situation may be straightened out we would appreciate it very much if you would take the *proper step* to see that it may be done. * * *."

Judge Bottorff's letter cannot be construed as a lawful or unlawful order of a court to the Warden to execute the Warden's order of March 25, 1957. On the contrary, it seeks a "proper step", not any action or particularly any improper step on the Warden's part such as interfering with Mr. Spires constitutional rights. There is a failure of proof of any unity of action between Judge Bottorff and the prison authorities for the issuance of the Warden's order of March 25, 1957, and Judge Bottorff cannot be held responsible for the conduct of another. In fact, Judge Bottorff had no knowledge of what step the Warden would take and knew nothing of the March 25, 1957 order until long after its execution. A warden of a prison is the custodian of a prisoner and the misconduct of a prisoner should and must be called to the attention of his custodian. Judge Bottorff's letter did not violate Mr. Spires' constitutional rights. Apparently, it only called attention to the Warden that Mr. Spires was effecting communications through some personnel of the institution contrary to the established policy of four (4) years of the restricted Mr. Spires of which policy Judge Bottorff was unaware and the Warden used Judge Bottorff's letter to effect a formal order.

The plaintiff, Mr. Spires, has wholly failed to show that any more rights had been denied him than were already denied him for four (4) years. Mr. Spires has wholly failed to show where he has been damaged when admittedly he made no attempt to file any legal proceedings with the Clark Circuit Court of Indiana during the few months the Warden's order of March 25, 1957 was in effect. This was an afterthought of Mr. Spires for the purpose of this action. On the contrary, he was devoting his full time (during the effective existence of the formal order) to the preparation of a habeas corpus action in the United States District Court for the Northern District of Indiana which he did file October 10, 1958. On January 22, 1957, he had filed an action against the Warden in the United States District Court for the Northern District of Indiana being Cause Number 2180 complaining of being held incommunicado since August 12, 1955. He did not contemplate filing anything in the Clark Circuit Court of Indiana during such time having already prosecuted two (2) error coram nobis actions in that court. Mr. Spires' damages have not been proved for the further reason that he is duly committed for life to the Indiana State Prison and he is going nowhere as such conviction is still a valid judgment. Aside from his right to reasonably communicate with the Clerk of the Fourth Circuit Court of Indiana, there are no damages shown or loss of rights shown as such judgment of conviction cannot be attacked in this civil action.

When the Supreme Court of Indiana determined that Judge Schnaitter did not have jurisdiction of Mr. Spires' third error coram nobis action in the Clark Circuit Court, any complaint of Mr. Spires in the instant action of Judge Bottorff intruding, interfering or influencing Judge Schnaitter's decision is moot. Spires v. State of Indiana, Ind., 189 N.E.2d 413; Ind., 190 N.E.2d 653. Under the circumstances of this case, there was no violation of the constitutional rights of Mr. Spires by any alleged intruding, interfering or influencing Judge Schnaitter when he has no jurisdiction in the case. Furthermore, Judge Bottorff did not illegally or unethically intrude, interfere or influence, or even attempt to do so, with Judge Schnaitter's decision in such third error coram nobis action of Mr. Spires. Judge Bottorff's written statement in affidavit form was taken and submitted by the State of Indiana in such action which facts were true and which in itself cannot support such claim of Mr. Spires. The Civil Rights Act in question does not give Mr. Spires a right of action for damages against a witness in a state court action of error coram nobis even though such witness was a judge as such evidence was presented not under color of his present office of judge but as any other witness of facts coming to his attention when he was serving as judge many years before the hearing.

Judge Bottorff's statement to Mr. Spires' attorney, a former Circuit Judge, that he would appear before the Supreme Court of Indiana was ineffectual and useless to influence Mr. Spires' attorney or Judge Schnaitter as Mr. Spires' attorney did appeal and Judge Bottorff did not appear before that court. Such action by Judge Bottorff did not interfere with Judge Schnaitter's decision. Judge Schnaitter determined the action on the merits based on the evidence before him and from independent research of the applicable law. He was not influenced by Judge Bottorff directly or indirectly in his decision.

Certain of the witnesses in the instant action whose testimony may be material to pending and future actions of Mr. Spires, if any, are approaching seventy (70) and eighty (80) years of age. After two (2) published opinions referring to Judge Bottorff's letter, this opinion is written to record the full facts of the case.

 Plaintiff's motion for new trial was filed September 25, 1963 after the court indicated at the conclusion of the trial there would be a finding in favor of defendant. The motion was denied October 2, 1963. The plaintiff asserts error in not being permitted by the State of Indiana's guards who transported him from the Indiana State Penitentiary at Michigan City, Indiana, to New Albany, Indiana, for the trial of this civil action for damages to make a telephone call to obtain an attorney to represent him in this action. He asserts error in the refusal of this court to permit plaintiff to make a telephone call to a reputable attorney and permitting such guards to keep the plaintiff from calling an attorney to represent him and that this court kept the plaintiff from calling an attorney to represent him. The action is civil and the plaintiff was the prisoner of the State of Indiana which state had honored an order of this court for the production of plaintiff for the trial of his action. His state guards were under security orders in view of his history as an escapee and had no discretionary powers to depart

from their security orders. The complaint had been on file since June 13, 1963 although the litigation commenced January 22, 1962, and plaintiff had not been able to secure an attorney to represent him. The action has been set for trial since the publishing of the trial calendar on August 16, 1963. A deposition of plaintiff was taken by the defendant on July 29, 1963 in the Indiana State Prison in which plaintiff stated in substance he was unable to obtain an attorney although he had tried. Plaintiff had the use of the mails while in prison to engage an attorney and was unsuccessful. This court is without jurisdiction to require the Indiana State Prison to permit plaintiff to communicate by telephone. When the case was called for trial, the plaintiff requested permission in open court to arrange for an attorney to represent him. Inquiry disclosed that he had the names of three (3) attorneys, some of whom were situated in Louisville, Kentucky; that he had no previous contact with them, directly or indirectly; and no timely request for a continuance had been made for such purpose although the cause had been set for trial since August 16, 1963. While the plaintiff has no formal legal education, it was apparent from the pleadings in this cause, the quantity of litigation in which he has indulged, and his performance in the trial of this cause that he was competent to conduct his own litigation. It was apparent that the likelihood of counsel accepting employment on the morning of trial was nil. The defendant had procured a number of witnesses who were present for the trial, some of whom plaintiff called as his own witnesses in that they were available, and defendant was ready for trial after the plaintiff had filed his motion for habeas corpus ad prosequendum indicating his readiness for trial of his action. Under the circumstances, there was no abuse of discretion in denying plaintiff's request. Normally, the court would await the trial of a civil case of a prisoner until his release. In this case, the litigant under a life sentence has sought immediate trial.

Plaintiff's motion for new trial asserts that the court failed to consider the testimony of Richard Kage who in 1957 was employed with the Indiana State Prison. His testimony was to the effect that by reason of Judge Bottorff's letter of March 19, 1957 he refused on March 21, 1957 to mail plaintiff's petition for a writ of error coram nobis. This court was unable to believe this testimony when considered with all of the applicable evidence. The witness was testifying concerning an incident occurring six (6) years previous; Judge Bottorff's letter was written March 19, 1957 and received by the Warden on March 21, 1957, whereas the Warden did not issue an order until March 25, 1957; and as pointed out in the recited facts of the case the plaintiff admitted he had not prepared the third petition for a writ of error coram nobis until after the opinion was rendered in Spires v. Dowd, Warden (7 C.A.) 271 F.2d 659 published November 12, 1959; and that during the period of January to September of 1957 the plaintiff admitted he was not concerned with nor had he prepared such third petition but was preparing the habeas corpus action which he ultimately filed October 10, 1958 with the United States District Court for the Northern District of Indiana. He had just three (3) months before, on January 22, 1957, filed an action against the Warden in the United States District Court for the Northern District of Indiana being Cause Number 2475 complaining of being held incommunicado since August 12, 1955. Page 54 of the deposition of Mr. Spires recites the following:

"Q. Well, I am speaking of the period between March '57 now until Warden Dowd allowed you to correspond again in '58. (Warden Dowd arrived May, 1957.)

"A. From '57 to '58—March?

"Q. Yes.

"A. No, there was nothing. I didn't send out nothing because I was working on the habeas corpus for the Federal Court.

"Q. And you did not send out this petition for writ of error coram nobis until 1960—that right?

"A. That's right, after the court of appeals had reversed the habeas corpus and ordered it to hold it—no, after the court of appeals reversed that habeas corpus they ordered the district court to reopen the case and hold it in postponement until I'd filed another writ of error coram nobis in trial court, and carried it on through the final determination. Now the reason they done that, the attorney general argued up there that I had never made any attempt to use the writ of error coram nobis, and then when it was denied there and appealed to the Indiana Supreme Court he just jumped the opposite way and said I wasn't entitled to that writ because I had filed two previous ones. So that was the time in between there that—."

And on page 78 of the deposition of Mr. Spires is the following:

"Q. Now you had determined sometime—when? In 1955, '56, '57 or so—to file this action in the district court in South Bend, had you, sir?

"A. That was—I figured that was the only place I could go since I was barred from the state court.

"Q. And you decided not to file a petition for writ of error coram nobis until 1960, is that correct, sir?

"A. Well, that was after the court of appeals had ordered it.

"Q. You could have filed it in September of '58?

"A. I don't know whether I could have or not. Every one before that had been rejected here.

"Q. But you had a new warden here at that time, did you not sir? (Warden Dowd arrived May, 1957.)

"A. Yes.

"Q. And he was allowing all of your papers to go through as far as you know?

"A. Except to anywhere down there. I didn't try it any more.

"Q. You have no reason to think that he would not have allowed papers to go to Clark County, do you?

"A. Yes, because that order was still there. (meaning Warden's order of March 25, 1957)

"Q. But—

"A. And I believe if I'd have sent one addressed to the Clark Court he might still have. There's a possibility that he would, and a good possibility that he would've not allowed.

"Q. You didn't try it, though?

"A. No. I didn't try it.

"Q. And didn't you previously indicate in this deposition that Warden Dowd was not—he got back in '58—that he more or less lifted the restriction? (Warden actually returned May, 1957.)

"A. He did, yes. * * *."

Warden Dowd was a witness and testified his term of office was from May 1, 1957 to January 15, 1961. Obviously, the questions and answers of plaintiff thereto referred to May 1, 1957, the date of the Warden's return, and not the year 1958. The plaintiff further never knew of Warden Overlade's order of March 25, 1957, or of Judge Bottorff's letter of March 19, 1957, until the year 1959. The evidence referred to, the physical facts and other evidence referred to in the decision had to be weighed by the court. The court rejected the accuracy of Mr. Kage's testimony and of plaintiff's conflicting assertions.

The other grounds of plaintiff's motion for a new trial are either determined in this decision or rejected for the reason given during the course of the trial upon the admission or rejection of evidence.

The plaintiff is not entitled to recover for the reason he has failed to prove the essential elements and facts of his complaint by a preponderance of the evidence and defendant is entitled to recover of plaintiff the costs of this action.